IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CHRISTINE RADOGNO, in her official capacity as Minority Leader of the Illinois Senate, *et al.*, | ) ) ) | |
| Plaintiffs, | ) ) | |
| vs | ) ) | NO.   1:11-cv-04884 |
| ILLINOIS STATE BOARD OF ELECTIONS, RUPERT BORGSMILLER, Executive Director of the Illinois State Board of Elections, HAROLD D. BYERS, BRYAN A. SCHNEIDER, BETTY J. COFFRIN, ERNEST C. GOWEN, WILLIAM F. McGUFFAGE, JUDITH C. RICE, CHARLES W. SCHOLZ, and JESSE R. SMART, all named in their official capacities as members of the Illinois State Board of Elections, | ) ) ) ) ) ) ) ) ) ) ) | Judges Elaine E. Bucklo, Diane S. Sykes and Phillip P. Simon

Magistrate Geraldine Soat Brown |
| Defendants. | ) | |

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT

The Plaintiffs' Amended Complaint recounts in exhaustive detail how the Democratic Caucuses abused the legislative process in an outright power grab at the expense of Latino and African-American voters as well as Republican voters throughout the state. The Redistricting Plan at issue was conceived behind closed doors without public scrutiny and jammed through the General Assembly on the Friday before Memorial Day weekend. The Resolutions that purported to describe the rationale for each and every district were released just hours before the final vote without any opportunity for public review or debate. The resulting Redistricting Plan will dilute Latino and African-American voting strength and thwart Republican political competitiveness for decades to come. The Plaintiffs' comprehensive Amended Complaint more than places the Defendants on notice of the constitutional and statutory infirmities in the Redistricting Plan.

Defendants' motion to dismiss the Amended Complaint fails, and the case should proceed to a trial on the merits.

## STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires only that a complaint set forth a short and plain statement of the claim showing that plaintiff is entitled to relief. A plaintiff need not plead a detailed set of facts, so long as the complaint supplies defendant with fair notice of what the claim is and the grounds upon which it rests. *Smith v. Medical Benefit Administrators Group, Inc.*, 639 F.3d 277, 281 (7th Cir. 2011). Plaintiff's claim must be plausible on its face which requires the court to consider whether the events alleged could have happened, not whether they did happen or likely happened. *Smith,* 639 F.3d at 281. In ruling on a motion to dismiss, the court must accept as true all of the factual allegations contained in the complaint and must draw all possible inferences in plaintiff's favor. *Justice v. Town of Cicero*, 577 F.3d 768, 771 (7th Cir. 2009), *cert. denied*, 130 S. Ct. 3410 (2010).

The Defendants drastically misread the *Twombly* and *Iqbal* cases, as if the Supreme Court in those cases had jettisoned notice pleading in favor of fact pleading. Def. Mem. at 4. It did nothing of the kind. *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010) ("The Court was not engaged in a *sub rosa* campaign to reinstate the old fact-pleading system…"). Instead, "the plaintiff must give enough details about the subject-matter of the case to present a story that holds together." *Id.*, 614 F.3d at 404. *See also Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (Rule 8 "reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities that might keep plaintiffs out of court", quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)). In other words, federal pleading requirements "simply call[] for enough facts to raise a reasonable expectation that discovery will

reveal evidence" in support of the plaintiffs' allegations. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007). *See also Erickson v. Pardus*, 551 U.S. 89, 93 (2007) ("Specific facts are not necessary; the statement need only give the defendant fair notice of what the ... claim is and the grounds upon which it rests.").

## ARGUMENT

**I.    COUNTS 1 AND 2 PROPERLY STATE CLAIMS FOR VIOLATION OF THE VOTING RIGHTS ACT**

Counts 1 and 2 allege sufficient facts to plead violations of the Voting Rights Act, 42 U.S.C. 1973.[1]  To prevail on a claim under Section 2 of the Voting Rights Act, a plaintiff must prove that (1) the minority group is sufficiently large and geographically compact to constitute a majority in a district; (2) the minority group is politically cohesive; and (3) whites usually vote sufficiently as a bloc to defeat the minority's preferred candidate. *Thornburg v. Gingles*, 478 U.S. 30, 49-51 (1986).  Defendants claim that Plaintiffs fail to plead the third *Gingles* requirement.  However, as Defendants themselves acknowledge, Plaintiffs plead that racial bloc voting is pervasive in Illinois both among majority and minority voting groups.  Am. Compl., ¶ 106.  This allegation, combined with the remaining allegations in the Amended Complaint regarding the *Gingles* factors (Am. Compl., ¶¶ 103-133), sufficiently states a Section 2 claim. Implicit in these allegations is that each of the districts at issue in Counts 1 and 2 meet the *Gingles* requirements, including the third prong.  The allegations put Defendants on fair notice of the claims in Counts 1 and 2 and the grounds upon which they rest, and Plaintiffs need not plead

---

[1] Plaintiffs agree to amend their complaint to allege each is a registered voter in his/her respective district.   Further, Plaintiffs concede that Counts 7 and 8 and the claims in Counts 3 through 8 against the Illinois State Board of Elections directly as an entity cannot be brought in this Court due to the protection provided states under the Eleventh Amendment.

detailed facts. *Smith,* 639 F.3d at 281. Accepting these allegations as true, Plaintiffs' claims of Section 2 violations are clearly plausible; therefore, Counts 1 and 2 state claims.

Defendants improperly seek to require Plaintiffs to prove their case at the pleading stage. Indeed, the cases cited by Defendants, *Johnson v. De Grandy*, 512 U.S. 997 (1994); *Growe v. Emison*, 507 U.S. 25 (1993) and *McNeil v. Springfield Park District,* 851 F.2d 937 (7th Cir. 1988), *cert. denied*, 490 U.S. 1031 (1989), are cases in which the court reviewed <u>evidence</u> admitted at the trial as to whether or not plaintiffs satisfied the three *Gingles* factors -- these cases were not decided on the pleadings. None of the cases cited by Defendants support Defendants' argument that Plaintiffs must robotically regurgitate verbatim the *Gingles* factors to state a cause of action. Plaintiffs' obligation to establish that white voters vote as a bloc usually to defeat the minority's candidate of choice to establish a Section 2 claim is a proof requirement. None of the cases cited by the Defendants hold that it is a pleading requirement. In this regard, Defendants again rely on cases where the court was reviewing the evidence, not the pleadings. *Williams v. State Bd. Of Elections,* 718 F. Supp. 1324, 1331 (N.D. Ill. 1989); *Jenkins v. Red Clay Consol. School Dist. Bd. of Educ.,* 4 F.3d 1103, 1123 (3d Cir. 1993), *cert. denied*, 512 U.S. 1252 (1994). Accordingly, Counts 1 and 2 properly state claims under Section 2 of the Voting Rights Act, and Defendants' motion to dismiss these counts must be denied.

Defendants also feign ignorance as to which districts are the subject of Counts 1 and 2. However, the Amended Complaint could not be more clear as to which districts are the subject of Counts 1 and 2 -- it identifies them specifically. *See* Am. Compl., ¶¶ 116, 118, 119, 128, 133. Plaintiffs recognize and plead that the evidence may show other districts also violate Section 2 of the Voting Rights Act. Plaintiffs' position as to these districts at issue will be fleshed out more fully in the Plaintiffs' expert reports to be provided to the Defendants on October 21. It clearly

does not require the dismissal of Counts 1 and 2. Accordingly, Defendants' motion to dismiss Counts 1 and 2 must be denied.

## II.    COUNTS 3 AND 4 STATE VALID JUSTICIABLE CLAIMS UNDER THE FIRST AND FOURTEENTH AMENDMENTS

Plaintiffs' First Amendment and Fourteenth Amendment (Equal Protection) claims are valid despite Defendants' allegations, which are based on a confused and selective reading of the Supreme Court's decisions in *Vieth v. Jubelirer*, 541 U.S. 267 (2004) and *League of United Latin American Citizens v. Perry*, 548 U.S. 399 (2006) ("LULAC"). Defendants would have this Court believe that the court in *Vieth* decided once and for all that political gerrymandering claims are non-justiciable. Defendants are plain wrong. Claims of political gerrymandering are justiciable. While four justices in *Vieth* said they would overrule *Davis* and find political gerrymandering claims non-justiciable, no majority of the court so held. To the contrary, a majority of the court declined to hold political gerrymandering claims non-justiciable. *Vieth.* 541 U.S. at 306. Moreover, the fact that clearly established standards for a political gerrymandering claim have not yet been set forth since *Vieth* does not render the claims non-justiciable. Accordingly, Defendants' motion on this basis must be denied.

Citizens may not be burdened or penalized because of their participation in the electoral process, their voting history, their association with a political party or their expression of political views. *Vieth*, 541 U.S. at 314 (Kennedy, J. concurring in judgment) citing *Elrod v. Burns*, 427 U.S. 347 (1976). Where political classifications are used to burden a group's representational rights, the First Amendment is violated absent a compelling interest. *Id.* Justice Kennedy has stated that the Fourteenth Amendment clearly governs questions of partisan gerrymandering, and argues that the First Amendment can be the basis of a subsidiary standard of inquiry into whether "political classifications were used to burden a group's representational

5

rights." *Vieth*, 541 U.S. at 314-315. Justice Kennedy went on to state that "[i]f a court were to find that a State did impose burdens and restrictions on groups or persons by reasons of their views, there would likely be a First Amendment violation, unless the State shows some compelling interest." *Id*.

Count 3 alleges facts sufficient for this Court to conclude that the Redistricting Plan was specifically drafted to systematically and intentionally burden the rights of Republicans in violation of their First Amendment rights. The Amended Complaint alleges that Democrats controlled the redistricting process and in exercising that control drew Representative and Legislative Districts which, without any compelling interest, are less compact than the previous redistricting plan and the Fair Map, cross traditional districting lines, excessively split counties and municipalities and pit significantly more Republican incumbents against each other than Democrat incumbents, all in a deliberate attempt to prevent Republicans' reelection and to systematically and intentionally dilute Republican voters' votes and burden their First Amendment rights. Am. Compl., ¶¶ 28, 103-105, 134-135, 139-153, 162, 164. All of this occurred in a setting with no state law checks and balances because all three branches of the Illinois government are controlled by the Democratic Party for the first time in decades. These facts clearly provide fair notice of Plaintiffs' claim that Defendants engaged in an unconstitutional political gerrymander in violation of Plaintiffs' First Amendment Rights and sets forth the grounds upon which Plaintiffs' claim rests. Assuming the facts to be true, Count 3 alleges a claim which is plausible on its face. Accordingly, Defendants' motion to dismiss Count 3 must be denied.

Defendants' reading of *LULAC* is similarly strained in that they broadly read the holding of that case to be a general rejection of partisan gerrymandering claims on simple "fairness"

grounds when, in fact, the reasoning of the court was more nuanced and limited to the facts of that case. The court in *LULAC* stated the following: "In sum, we disagree with appellants' view that a legislature's decision to override a valid, court-drawn plan mid-decade is sufficiently suspect to give shape to a reliable standard for identifying unconstitutional political gerrymanders. We conclude that appellants have established no legally impermissible use of political classifications. For this reason, they state no claim on which relief may be granted for their statewide challenge." *LULAC*, 548 U.S. at 423.

Although Defendants would mislead this court into believing that partisan gerrymandering is both a *de facto* and *de jure* non-justiciable issue,[2] partisan gerrymandering is still against the law after *Vieth*, and the Supreme Court has, on a number of occasions, reiterated this stance. *See Id.*; *Cox v. Larios*, 542 U.S. 947, 950 (2004) (Justices Stevens and Breyer stated in a joint concurring opinion that the facts of this case show that partisan gerrymandering is "visible to the judicial eye" and emphasized that, had the Supreme Court in *Vieth* adopted a standard, that standard would have been satisfied in this case where traditional redistricting principles were subordinated to partisan politics; *LULAC*, 548 U.S. at 414 (Justice Kennedy reiterates that partisan gerrymandering is still justiciable after *Vieth*).

Likewise, Count 4 plausibly alleges that the Redistricting Plan constitutes a political gerrymander in violation of Plaintiffs' equal protection rights. Plaintiffs allege that Democrats had exclusive control over the redistricting process and, without sufficient justification, drafted the Redistricting Plan which is less compact than the previous redistricting plan and the Fair Map; contains more splits of counties and municipalities than the alternative map; dilutes the

---

[2]Defendants attempted to obfuscate this issue by declaring that "[t]he plurality decision [in *Vieth*] concluded that political gerrymandering claims are non-justiciable political questions . . .[,]" Def. Mem., at 10, while burying in footnotes the fact that partisan gerrymandering is indeed still justiciable after *Vieth*, Def. Mem., n. 4.

votes of African-Americans and Latinos in several districts; pits many more Republican incumbents against one another than Democrat incumbents; creates districts of such bizarre shape that they can only be understood to intentionally separate voters to prevent election of Republicans; creates districts with the intent and effect of separating voters on the basis of their party and will unfairly result in a substantial Democratic majority for the next decade. Am. Compl., ¶¶ 103-138, 144-145, 165-66. These allegations clearly rise to the level of an Equal Protection violation.

Further, the Amended Complaint alleges that the process that led to the enactment of the Redistricting Plan, as well as the purpose and effect of that plan, violate the Plaintiffs' core First Amendment and equal protection rights. In particular, Count 4 alleges that "the Redistricting Plan was conceived and enacted by the majority party in an arbitrary and discriminatory manner with the purpose and effect of denying the Plaintiffs equal protection." Am. Compl. ¶ 165. As a district court in this state has held, the Equal Protection Clause is violated when the process by which a redistricting plan was created is "tainted with arbitrariness and discrimination." *Hulme* v. *Madison County*, 188 F.Supp.2d 1041, 1051 (S.D. Ill. 2001). *Hulme* cannot be confined to the context of malapportionment for the simple reason that the population deviation in that case fell below the 10% threshold established by the Supreme Court for shifting the burden of justification to the state. *Id*. at 1047 citing *Brown v. Thomson*, 462 U.S. 835, 842-43 (1983). Instead, *Hulme* stands as a straightforward application of standard equal protection principles: where a lawmaking process has the purpose and effect of discriminating against a discrete group, the government bears the burden of justifying the unequal treatment.[3] The facts in this case rise

---

[3]Although a New York District Court has distinguished *Hulme*, the factual allegations in Plaintiff's Amended Complaint are far more wide reaching than mere legislative "rudeness" or

to the level of those in *Hulme* and have been sufficiently alleged to proceed past the pleading stage. Hence, Defendants' motion to dismiss Count 4 must be denied as well.

## III.    COUNT 5 STATES A CLAIM UPON WHICH RELIEF MAY BE GRANTED

In Count 5 of their Amended Complaint, the Plaintiffs allege that the Illinois Voting Rights Act of 2011 ("IVRA") violates the Equal Protection Clause of the Fourteenth Amendment both on its face and as applied to the Redistricting Plan. Am. Compl. ¶¶ 166-177. State redistricting laws that use racial classifications, such as those contained in the text of IVRA, are expressly prohibited under the Equal Protection Clause, even those that appear neutral on their face. *Miller v. Johnson,* 515 U.S. 911, 905, 913 (1995). The Plaintiffs have alleged, and the Defendants do not dispute, that the IVRA, on its face requires creation of a redistricting plan that makes an explicit racial classification between racial and language minorities and all other citizens. Am. Compl. ¶ 166. Such racial classifications are inherently suspect and subject to challenge. *Id.; See also Gratz v. Bollinger*, 539 U.S. 244 (2003) (regarding statute that fixed a number of bonus points to be awarded to college applicants on the basis of race) and *Parents Involved in Community Schools v. Seattle Sch. Dist. No. 1,* 551 U.S. 701 (2007) (regarding law assigning students to a school on the basis of race). As it relates to the as-applied challenge, the Plaintiffs have alleged that the racial mandates within the IVRA forced the creators of the Redistricting Plan to focus on racial classifications at the expense of other traditional redistricting principles. Am. Compl. ¶¶ 168, 170, 175. These factual allegations, taken as true, plainly state a plausible claim that the IVRA violates the Equal Protection Clause of the Fourteenth Amendment. *Swanson v. Citibank N.A.*, , 614 F.3d 400, 404 (7th Cir. 2010).

---

giving opposing political proposals "short shrift." *See Cecere* v. *County of Nassau*, 274 F.Supp.2d 308, 319 (2003).

The Defendants urge this Court to dismiss Count 5 because the perfunctory language within sections (a) and (d) somehow immunizes it from any constitutional challenge. Def. Mem. at 13-14. The constitutional infirmity of the IVRA is that it classifies citizens solely on the basis of race. *Parents Involved,* 551 U.S. at 797 (2007) (Kennedy, J., concurring). Government action that relies on such stereotypes sends a message that one's membership within a racial group is more important than one's individual identity. *Id.* Even "benign" race-based statutes are inherently suspect because they suggest a misplaced confidence in separating "good from harmful governmental uses of racial criteria." *Id.* at 742 quoting *Metro Broadcasting, Inc. v. F.C.C.,* 497 U.S. 547, 609-10 (1990) (also noting that "'simple legislative assurances of good intention cannot suffice.'" *City of Richmond v. J.A. Croson Co.*, 488 U.S. 469, 500 (1989)). Placing a pro forma constitutional saving clause within the body of IVRA does not neutralize its facial constitutional infirmity.

Plaintiff Adam Brown has standing to raise both the facial and as-applied challenge to the IVRA. Plaintiff Brown is a registered voter within Representative District 96 which was created using race as the predominant factor as mandated by the IVRA. Am. Compl. ¶¶ 6, 168-69, 176-77. He has clearly suffered an injury in fact causally connected to the impermissible racial classifications within the IVRA itself that can only be remedied by the relief requested. *United States v. Hays*, 515 U.S. 737 (1995). It does not follow, as the Defendants suggest, that under *Hays,* Plaintiff Brown would not have standing to raise a statewide challenge. Def. Mem. at 19-20. The Court in *Hays* never held that a voter within an affected district may *only* challenge their own district. Such a holding would effectively preclude any plaintiff from raising a statewide challenge. A court should be hesitant to reach that conclusion, especially in light of landmark cases like *Baker v. Carr*, 369 U.S. 186 (1962) in which the Court entertained statewide claims.

Furthermore, the Supreme Court has held that an individual, like Plaintiff Brown, who has suffered an injury as a result of the statute also has standing to challenge the constitutionality of the statute as a whole. *Bond v. U.S.*, 131 S. Ct. 2355, 2365 (2011). Therefore, Plaintiff Brown has standing to raise the facial and as-applied challenges to the IVRA alleged.

## IV.   THE CREATION OF REPRESENTATIVE DISTRICT 96 VIOLATED THE EQUAL PROTECTION CLAUSE

The Plaintiffs' factual allegations in Count 6 plainly state that the creators of the Representative District 96 elevated race above all other traditional redistricting principles, including the maintenance of county and municipal boundaries and communities of interest, incumbent-constituent relationships, partisan balance and the core of the previous district. Am. Compl. ¶¶ 177-189. The Supreme Court has recognized that the foregoing principles, including partisan balance, are among the traditional redistricting criteria that may not be subordinated to racial classification. *Miller v. Johnson*, 515 U.S. 900, 916 (1995); *see also* Def. Mem. at 1. By alleging that the creation of Representative District 96 lowers the partisan advantage of Republican voters in surrounding area, the Plaintiffs have not transformed this claim into a political gerrymander claim as already alleged in Count 3. The Plaintiffs are alleging that the creators of the Redistricting Plan considered the race of the communities in Springfield and Decatur as paramount to partisan makeup of the districts. These factual allegations, accepted as true, state a claim for a violation of the Equal Protection Clause. *Miller*, 515 U.S. at 916.

## V.   PLAINTIFFS CROSS AND RADOGNO HAVE STANDING

Defendants claim that Plaintiffs Cross and Radogno lack standing on all claims because they have sued in their official capacity as Illinois state legislators. Def. Mem. at 23-24. As a threshold matter, the Plaintiffs Cross and Radogno have sued in their capacity as Minority Leaders in the Illinois House of Representatives and the Illinois Senate, respectively. Am.

Compl. ¶¶ 2, 3. The Illinois Constitution of 1970 recognizes the Minority Leader as the leader of the numerically strongest political party other than party of the Speaker of the Illinois House or Senate. IL CONST. 1970, art. IV, § 6(c). The Minority Leaders of the House and Senate serve an important function within the General Assembly as the primary voice of the Republican caucuses and Republican voters throughout the state. Am. Compl. ¶¶ 2, 3.

In order to have standing, Plaintiffs Cross and Radogno must allege that they have suffered an actual injury that is fairly traceable to the Defendants' actions and can be remedied by the relief sought. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). As alleged in the Amended Complaint, the Redistricting Plan created by the Democratic Caucuses systematically and unequally burdens the ability of Leaders Cross and Radogno to carry out their constitutionally prescribed duty of representing the interests of their caucuses and Republican voters throughout the State. Am. Compl. ¶¶ 2, 3, 147. It does so by fracturing Republican voters, diluting Republican voting strength, severing Republican incumbent-electorate relationships, burdening Republican expressive association, and guaranteeing a Democratic majority in each house of the General Assembly for at least the next decade. Am. Compl. ¶¶ 2, 3, 139-153, 162-165. The Plaintiffs seek to enjoin the Defendants from conducting future elections under the Redistricting Plan and to have a new map drawn that comports with all constitutional requirements. Am. Compl. at 29-30. This relief would undoubtedly restore Plaintiffs Cross' and Radogno's ability to carry out their constitutional and statutory duties to represent the interests of their caucuses and Republican voters throughout the state.

By the defendants' own concession, Plaintiffs Cross' and Radogno's interests are substantially aligned with those of the Illinois Republican Party. *See* Defendants' Response to Illinois Republican Party's Petition to Intervene, at 6 ("The IRP is hard-pressed to explain how

its interests deviate so dramatically that counsel for the current parties cannot adequately represent its interests."). It is well established that political parties have standing to vindicate their constitutionally protected competitive and expressive interests. For instance, the Supreme Court has consistently recognized the standing of political parties and organizing committees to raise First Amendment challenges to regulations of the electoral process. *See, e.g., Republican Party of Minnesota v. White*, 536 U.S. 765 (2002); *California Democratic Party v. Jones*, 530 U.S. 567 (2000); *Eu v. San Francisco Democratic Cent. Committee*, 489 U.S. 214 (1989). Like the plaintiffs in those cases, Leaders Cross and Radogno seek nothing more than to uphold the interests in expressive association and political competitiveness that they are duty-bound to protect.

Defendants' reliance on *Raines v. Byrd*, 521 U.S. 811 (1997), is misplaced. Def. Mem. at 23-24. *Raines* held that individual members of Congress who had voted against the Line Item Veto Act lacked standing to challenge that Act in federal court. 521 U.S. at 821. Thus, as the Supreme Court emphasized, the plaintiffs based their claim on "a type of institutional injury (the diminution of legislative power), *which necessarily damages all Members of Congress and both Houses of Congress equally*." *Id.* at 821 (emphasis added). *See also Id.* at 824 n.7 (plaintiffs were "unable to show that their vote was denied or nullified *in a discriminatory manner*.") (emphasis added). By contrast, here, the Plaintiffs Cross and Radogno allege that the entire purpose and effect of the redistricting plan was discriminatory: namely, the singling out for special burdens of the caucuses they are authorized by the Illinois Constitution and state law to lead and represent. Am. Compl. ¶¶ 2, 3, 147-148. Moreover, the *Raines* court emphasized that members of Congress retained the ability to amend the Line Item Veto Act -- or exempt future legislation from its dictates -- by a simple majority vote. *Id.* at 824. Again, the contrast with this

case is stark. Because of the entrenched harms imposed by the Redistricting Plan, the caucuses led by Plaintiffs Radogno and Cross will be deprived of the ability to compete on a level playing field in the marketplace of political ideas for at least a decade unless this court orders injunctive relief.

The Defendants' emphasis on *Quilter v. Voinovich*, 981 F. Supp. 1032 (N.D. Oh. 1997) is equally inapposite. As the Defendants themselves describe, *Quilter* involved an attempt by the minority members of a state agency to use the federal courts to reverse a vote that had already been taken within the agency. Def. Mem. at 23-24. Here, Plaintiffs Cross and Radogno seek to enjoin a Redistricting Plan that will harm the interests of their respective caucuses throughout the state for years to come.[4] Accordingly, Cross and Radogno have standing to bring the claims set forth in the Amended Complaint.

## CONCLUSION

Against that backdrop, Defendants' motion to dismiss must be denied.

/s/--------Phillip A. Luetkehans----------------------
One of the Attorneys for Plaintiffs Christine
Radogno, Veronica Vera, Elidia Mares and Edwin
Tolentino

/s/ --------Andrew Sperry-----------------------------
One of the Attorneys for Plaintiffs Thomas Cross,
Adam Brown, Chloe Moore, Joe Trevino, Angel
Garcia

---

[4]*Nevada Com'n on Ethics v. Carrigan*, 131 S. Ct. 2343 (2011), stands for precisely the opposite proposition to the one for which it is cited by the Defendants. Defendants' Mem. at 23. The Court in *Carrigan* tacitly found, by reaching the merits, that a city council member had standing to raise a First Amendment challenge.

/s/--------Thomas M. Leinenweber------------------
One of the Attorneys for Plaintiffs Thomas Cross, Adam Brown, Chloe Moore, Joe Trevino, Angel Garcia

E-filed: September 6, 2011

Phillip A. Luetkehans, 06198315
pluetkehans@slg-atty.com
Brian J. Armstrong, 06236639
barmstrong@slg-atty.com
Stephanie J. Luetkehans, 06297066
sluetkehans@slg-atty.com
SCHIROTT, LUETKEHANS & GARNER, P.C.
105 East Irving Park Road
Itasca, IL 60143
630-773-8500

Thomas M. Leinenweber, 6208096
thomas@landb.us
Peter Baroni, 6236668
peter@ilesq.com
Leinenweber Baroni & Daffada LLC
203 N. LaSalle St., Suite 1620
Chicago, IL 60601
(866) 786-3705

Andrew Sperry, 6288613
asperry@laroseboscolaw.com
LaRose & Bosco, Ltd.
200 N. LaSalle St., Suite 2810
Chicago, IL 60601
(312) 642-4414

## CERTIFICATE OF SERVICE

I hereby certify that on the 6th day of September, 2011, I electronically filed Plaintiffs'

Memorandum of Law in Opposition to Defendants' Motion to Dismiss Amended Complaint with

the Clerk of the U.S. District Court, Northern District of Illinois, Eastern Division using the

CM/ECF system which will send notification of such filing to the following:

asperry@laroseboscolaw.com

thomas@landb.us

bstratton@atg.state.il.us

dellis@hds.ilga.gov

mlayden@rjpltd.com

rprendergast@rjpltd.com

mjkasper60@mac.com

peter@ilesq.com

emadiar@senatedem.ilga.gov

fogartyjr@gmail.com

mike.persoon@gmail.com

and I hereby certify that I mailed by U.S. Postal Service the document(s) to the following non-

registered attorneys and interested parties:  NONE.

/s/--------Brian J. Armstrong--------------------
     One of the Attorneys for Plaintiffs
     Christine Radogno, Veronica Vera,
     Elidia Mares and Edwin Tolentino

Phillip A. Luetkehans, 06198315
pluetkehans@slg-atty.com
Brian J. Armstrong, 06236639
barmstrong@slg-atty.com
Stephanie J. Luetkehans, 06297066
sluetkehans@slg-atty.com
SCHIROTT, LUETKEHANS & GARNER, P.C.
105 East Irving Park Road
Itasca, IL 60143
630-773-8500

Thomas M. Leinenweber
thomas@landb.us
Peter G. Baroni
peter@ilesq.com
Leinenweber Baroni & Daffada LLC
203 N. LaSalle St., Suite 1620
Chicago, IL 60601
(866) 786-3705

Andrew Sperry, 6288613
LaRose & Bosco, Ltd.
200 N. LaSalle St., Suite 2810
Chicago, IL 60601
(312) 642-4414
asperry@laroseboscolaw.com