THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHRISTINE RADOGNO, in her official capacity as Minority Leader of the Illinois Senate, THOMAS CROSS, in his official capacity as Minority Leader of the Illinois House of Representatives, ADAM BROWN, in his official capacity as a state representative from the 101st Representative District and individually as a registered voter, VERONICA VERA, ANGEL GARCIA, and EDWIN TOLENTINO, and THE ILLINOIS REPUBLICAN PARTY (Intervening Plaintiff),<br><br>Plaintiffs,<br><br>vs<br><br>ILLINOIS STATE BOARD OF ELECTIONS, RUPERT BORGSMILLER, Executive Director of the Illinois State Board of Elections, HAROLD D. BYERS, BRYAN A. SCHNEIDER, BETTY J. COFFRIN, ERNEST C. GOWEN, WILLIAM F. McGUFFAGE, JUDITH C. RICE, CHARLES W. SCHOLZ, and JESSE R. SMART, all named in their official capacities as members of the Illinois State Board of Elections, AFRICAN AMERICANS FOR LEGISLATIVE REDISTRICTING (Intervening Defendant), UNITED NEIGHBORHOOD ORGANIZATION (Intervening Defendant), COLOMBIANOS UNIDOS PARA UNA LABOR ACTIVE (Intervening Defendant), HISPANIC AMERICAN CONSTRUCTION INDUSTRY ASSOCIATION (Intervening Defendant, and FEDERACION JALISCIENSE DEL MEDIO OESTE DE LOS ESTADOS UNIDOS (Intervening Defendant).<br><br>Defendants. | No. 1:11-cv-04884<br><br>Judges Sykes, Bucklo and Simon<br>(3-judge court convened pursuant to 28 U.S.C. § 2284) |

**DEFENDANTS' MEMORANDUM OF LAW
IN SUPPORT OF THEIR RULE 12(b)(6)MOTION
TO DISMISS COUNTS 2, 3 AND 4 OF THE SECOND AMENDED COMPLAINT**

Defendants, through their attorneys, and in support of their Motion to Dismiss Counts 2, 3 and 4 of the Seconded Amended Complaint pursuant to Rule 12(b)(6), state as follows:

## I. INTRODUCTION

This Court's October 21, 2011 Opinion and Order, after comprehensively reviewing caselaw addressing the subject of political gerrymandering, concluded that such a claim is justiciable "in principle" but is also currently "unsolvable." Document no. 59, p. 10. "This means that Plaintiffs' political gerrymandering claim based on the Equal Protection Clause may be justiciable, but only if they articulate a workable standard of fairness by which to assess that claim and make allegations sufficient to give rise to a plausible inference that the redistricting plan violates the standard." *Id.* at pp. 10-11. Recognizing that the Supreme Court "was unable on two occasions to agree on a standard" and that it "may be an exercise in futility" to attempt to do so, this Court nevertheless gave Plaintiffs leave "to amend Count 4 of the Amended Complaint in order to attempt to provide a 'workable test' or a 'reliable standard' for judging partisan gerrymanders under the Equal Protection Clause of the Fourteenth Amendment." *Id.* at p. 11. Only then would it be possible to assess whether Plaintiffs have alleged facts "sufficient to give rise to a plausible inference that the redistricting plan violates the standard." *Id.*

Plaintiffs' amended political gerrymandering claims should be dismissed because, like their first failed effort, Plaintiffs do not articulate any "workable test" or "reliable standard" for judging an unconstitutional partisan gerrymander. Defendants and the Court therefore are left with no way to assess whether the allegations made by Plaintiffs are "sufficient to give rise to a plausible inference that the redistricting plan violates the standard" the Plaintiffs have failed to articulate. As noted, in their First Amended Complaint, Plaintiffs included one count making vague allegations that the challenged redistricting plan amounted to "purposeful and intentional" discrimination against certain groups of voters in violation of their Fourteenth Amendment

1

rights. (The First Amended Complaint also contained a single count alleging the Redistricting Plan violated Plaintiffs' First Amendment rights because of their political beliefs. That count was dismissed with prejudice).

In response to the Court's invitation to articulate a "reliable standard," Plaintiffs have elected to adopt a "throw everything at the wall and see what sticks" approach. The Second Amended Complaint ("SAC") not only amends Count 4 from the First Amended Complaint, but tosses in two new Counts. All three counts claim to be predicated on the Fourteenth Amendment. None of them, however, comes remotely close to suggesting either a workable test or a reliable standard. Accordingly, they should each be dismissed.

Count 2 should be dismissed because, to the extent it can be read as proposing any standard at all, it simply restates proposed bases for partisan gerrymander claims that have already been expressly rejected by the Supreme Court. Count 3 does not even attempt to enunciate a standard, but instead uses the same vague words like "intentional" and "purposeful" that this Court initially dismissed. Count 4 does nothing more than replace these words with equally vague and elusive (if not more so) adjectives such as "invidious" and "arbitrary." Because the Seconded Amended Complaint does not even attempt to set forth a political gerrymandering standard, there is no way to assess whether the standard has been satisfied. The political gerrymandering counts (2, 3, and 4) should be dismissed.

## II. ARGUMENT

### A. Count 2 Should Be Dismissed Because Any Standard It Could Be Read To Include Has Been Rejected By The Supreme Court.

Count 2 of the SAC is virtually identical to claims that were set forth in the initial Complaint. Count 2 contains numerous factual allegations regarding the Redistricting Plan (county splits, district retention, incumbent pairings, etc.) (*see* SAC, ¶¶ 149-158), and concludes

2

that the Plan "constitutes an intentional, systematic, and unfair political gerrymander..." SAC, ¶ 161. Later in Count 2, Plaintiffs allege that "[b]ased on a totality of the circumstances..." partisan advantage was "the predominant factor in creating the Redistricting Plan..." *Id.* at ¶ 167. Neither of these two allegations comes anywhere near asserting a measurable standard for these claims. In fact, both phrases, if they can be read as proposed standards, have been specifically rejected by the Supreme Court.

The first, that the Redistricting Plan is an "intentional, systematic and unfair" political gerrymander, has been specifically rejected by the Supreme Court. *Vieth v. Jubelirer*, 541 U.S. 267, 291 (2004). Likewise, the *Vieth* Court also rejected a totality of the circumstances test. *Id.* In fact, the Court effectively equated the two and rejected them both:

> While Justice Powell rightly criticized the *Bandemer* plurality for failing to suggest a constitutionally based, judicially manageable standard, the standard proposed in his opinion also falls short of the mark. It is essentially a totality-of-the-circumstances analysis, where all conceivable factors, none of which is dispositive, are weighed with an eye to ascertaining whether the particular gerrymander has gone too far—or, in Justice Powell's terminology, whether it is not "fair." "Fairness" does not seem to us a judicially manageable standard. Fairness is compatible with noncontiguous districts, it is compatible with districts that straddle political subdivisions, and it is compatible with a party's not winning the number of seats that mirrors the proportion of its vote. *Some criterion more solid and more demonstrably met than that seems to us necessary to enable the state legislatures to discern the limits of their districting discretion, to meaningfully constrain the discretion of the courts, and to win public acceptance for the courts' intrusion into a process that is the very foundation of democratic decisionmaking.* (Emphasis added).

In *Vieth*, the Supreme Court also considered a proposed "predominant intent" standard virtually identical to that set forth in the SAC, *i.e.*, that a plaintiff must "show that the mapmakers acted with a predominant intent to achieve partisan advantage..." *Id.* at ¶ 284. Here, Plaintiffs allege that "the predominant factor in creating the Redistricting Plan was the enhancement of the partisan advantage..." SAC, ¶ 167. The Court flatly rejected this standard:

3

> Vague as the "predominant motivation" test might be when used to evaluate single districts, it all but evaporates when applied statewide. Does it mean, for instance, that partisan intent must outweigh all other goals—contiguity, compactness, preservation of neighborhoods, etc.— *statewide*? And how is the statewide "outweighing" to be determined?

*Id.* at ¶ 285.

After *Vieth*, the Supreme Court went so far as to reject a "sole motivation" standard. *League of United Latin Amer. Citizens v. Perry*, 548 U.S. 399, 417-19 (2006) (LULAC) (Kennedy, J.) (finding the standard unconvincing and stating that a successful claim must "show a burden, as measured by a reliable standard, on the complainants' representational rights.")

Count 2 contains, at best, three allegations that could be read as proposing a standard: (a) unfairness; (b) totality of the circumstances; and (3) predominant intent. Each of these proposed standards has been specifically considered, and rejected, by the Supreme Court in *Vieth*. Count 2 should be dismissed.

### B. Count 3 Is Virtually Identical To The Claim This Court Dismissed In Its October 21, 2011 Opinion And Order.

Count 3, although labeled "Equal Protection – Redistricting Plan – Intentional and Purposeful Discrimination," is simply a restatement of the First Amended Complaint's political gerrymander claim previously dismissed in this case. Count 3 of the First Amended Complaint alleged that the Redistricting Plan violated Plaintiffs' rights to "political expression" and "expressive association." First Amended Complaint, ¶ 162. In Count 3 of the SAC, Plaintiffs claim that the Redistricting Plan "intentionally and purposefully" discriminates against Plaintiffs' "political beliefs and right to affiliate." SAC, ¶ 176. In short, Count 3 simply changes the word "expression" to "beliefs" and substitutes the word "affiliate" for the word "association."

This word substitution cannot change the fact that Count 3 of the SAC essentially restates the same First Amendment claim that this Court has already dismissed upon determining the

4

absence of any connection between the Redistricting Plan and either freedom of expression or association. Mem. Op., Document no. 59, Oct. 21, 2001, pp. 12-13.

Plaintiffs conclude that because the Plan "intentionally and purposefully" discriminates against Plaintiffs due to "their political beliefs and desire to affiliate" the Plan violates their Fourteenth Amendment rights. SAC at ¶ 179. In other words, Count 3 alleges that the Redistricting Plan constitutes viewpoint discrimination against Republican voters and also infringes on their right to associate. Of course, both viewpoint discrimination and associational discrimination implicate the First Amendment. *Good News Club v. Milford Central School*, 533 U.S. 98 (2001) (viewpoint discrimination); *Elrod v. Burns*, 427 U.S. 347 (1976) (associational discrimination).

But this Court has already dismissed, with prejudice, the First Amendment political gerrymandering claims alleged in Plaintiffs' First Amended Complaint. Document no. 59, p. 14. The SAC simply restates the same allegations but couches them as violating the Fourteenth Amendment instead of the First Amendment. Count 3 should be dismissed because amending the complaint to comply with this Court's Order to allege a workable test or reliable standard cannot be as simple as changing the number "1" to the number "14", and breaking out a thesaurus to find a few synonyms.

Regardless of whether the alleged viewpoint and affiliation discrimination should be couched as a First or Fourteenth Amendment violation, the Plaintiffs have completely failed, in Count 3, to even allege a standard. Count 3 contains several paragraphs regarding the alleged compactness or non-compactness of the Plan's Representative Districts (it does not say which ones). SAC, ¶ 169, 170, 174, 175. Count 3 also takes issue with the "bizarre shape of the Representative Districts" (again, it does not say which ones) in the Redistricting Plan. *Id.* at ¶

5

177. The gist of Count 3 apparently is that the Redistricting Plan contains Representative Districts that have "bizarre shapes" and that are "not compact" and that this is enough to prove "intentional and purposeful" discrimination against both the Plaintiffs and all Republican voters. *Id.* at ¶¶ 175, 180.

However, even assuming the factual allegation is true – that the Plan contains districts that are not compact and have "bizarre" shapes – that hardly establishes any partisan advantage at all, much less a standard by which a court could measure whether there is too much advantage. In *Vieth*, Justice Scalia noted that a fair redistricting plan is "compatible with noncontiguous districts, it is compatible with districts that straddle political subdivisions, and it is compatible with a party's not winning the number of seats that mirrors the proportion of its vote." *Vieth*, 541 U.S. at 291. Similarly, non-compact, bizarrely shaped districts could be compatible with a completely partisan-neutral redistricting plan.

If the proposed standard is that a Redistricting Plan containing any non-compact, bizarrely shaped districts is an unconstitutional political gerrymander, it is completely unworkable. First, and most obviously, what is a "bizarre" shape? Even if "bizarre" is measurable, and if a district's shape is bizarre, does that invalidate only that district or the entire plan? What about the neighboring, non-bizarre shaped districts? The same is true for compactness. What if a district is compact under one compactness measure, but not another? How many non-compact districts does it take to tip the plan over the edge of constitutionality? What if the non-compact districts all benefit the minority party at the expense of the majority?

Count 3 of the SAC, construed an attempt to state a Fourteenth Amendment claim instead of a First Amendment claim, fares no better than the First Amended Complaint at articulating a

6

workable test or a reliable standard. Reliance on any word as vague and subjective as "bizarre" simply highlights the problem. Count 3 should be dismissed.

### C. Count 4 Should Be Dismissed Because It Is Simply A Restatement Of Count 3 Rather Than A New Allegation.

Count 4 is nothing more than a restatement of Count 3. A redlined comparison of the applicable paragraphs in each Count reads as follows:

> ~~171~~184. It is the State's duty to enact and follow a redistricting plan that does not ~~intentionally~~ invidiously or ~~purposefully~~ arbitrarily discriminate against voters because of their political beliefs or party affiliations in violation of Article 2, Section 3(a) of the Illinois Constitution.

> ~~178~~185. The State failed to fulfill ~~its duty~~ these duties as ~~required by the Illinois Constitution as set forth above because~~ the Redistricting Plan passed by the Democratically-controlled House and Senate was designed to and does ~~intentionally~~ invidiously and ~~purposefully~~ arbitrarily discriminate against Republican voters in favor of otherwise similarly situated Democratic voters.

> ~~179~~186. Because the Redistricting Plan ~~intentionally~~ invidiously and ~~purposefully~~ arbitrarily discriminates against Plaintiffs and Republican voters ~~due to~~ because of their political beliefs and desire to affiliate, the enforcement of the Redistricting Plan violates the Plaintiffs' rights granted by the Equal Protection Clause of the Fourteenth Amendment to United States Constitution.

> ~~180~~187. The ~~intentional~~ invidious and ~~purposeful~~ arbitrary discrimination suffered by Plaintiffs and Republican voters violates the Equal Protection Clause of the Fourteenth Amendment to United States Constitution.

In short, all Count 4 does, in four separate places, is change the word "intentional" to the word "invidious" and, in the same four places, change the word "purposeful" to the word "arbitrary." Count 4 also deletes Count 3's references to compactness and bizarre shapes, leaving it even emptier than Count 3. Count 4 simply claims that the Redistricting Plan "was designed to and does invidiously and arbitrarily discriminate against Republican voters…" SAC, ¶ 185. It does not say how this discrimination is affected, or in what individual districts, if any. Count 4 offers no test or standard at all, much less a workable or reliable one, to measure these allegations. Count 4 simply contains vague conclusions, without even offering any proposed

7

standard. As a result, Count 4 comes nowhere close to the Court's October 21 directive to amend Count 4 to set forth a workable test or reliable standard. Count 4 does not simply fail to do so, it fails even to try. Accordingly, Count 4 should be dismissed.[1]

### III. CONCLUSION

This is not a game of words. As the *Vieth* Court made clear, a reliable standard against which to measure the constitutionality of a redistricting map is essential in order to enable the legislative branch to "discern the limits" of its redistricting discretion. It is needed to "constrain the discretion of the courts," and it is required to "win public acceptance for the courts' intrusion into a process that is the very foundation of democratic decision-making." Plaintiffs have hardly even gone through the motions of articulating such a standard. Since no one has yet defined such a standard, it may be too much to expect that Plaintiffs would be the first to do so. But, as discussed, the effort here amounts to little more than a reiteration of what was attempted, without success, in the First Amended Complaint. Counts 2, 3 and 4 should therefore be dismissed with prejudice.

Respectfully submitted,

By: /s/ Richard J. Prendergast, Esq.
One of the Attorneys for Defendants Illinois State Board of Elections, its Executive Director, and individual members

Brent D. Stratton
Chief Deputy Attorney General
Office of the Illinois Attorney General
100 W. Randolph, 12th Floor
Chicago, IL 60601
(312) 814-4499

Richard J. Prendergast
Michael T. Layden
Special Asst. Attorneys General
Richard J. Prendergast, Ltd.
111 W. Washington St., Suite 1100
Chicago, Illinois 60602
(312) 641-0881

---

[1] *See*, "Measuring Compactness and the Role of Compactness Standard in a Test for Partisan and Racial Gerrymandering," *Journal of Politics*, Vol. 52, No. 4 (Nov. 1990), pp. 1155-181.

8

| | | |
|---|---|---|
| David W. Ellis<br>Special Asst. Attorney General<br>402 State House<br>Springfield, IL 62706<br>(217) 782-3392 | Eric M. Madiar<br>Special Asst. Attorney General<br>605 State House<br>Springfield, IL 62706<br>(217) 782-2156 | Michael J. Kasper<br>Special Asst. Attorney General<br>222 N. LaSalle St., Suite 300<br>Chicago, IL 60601-1013<br>(312) 405-3292 |

William J. Harte
Joan M. Mannix
William J. Harte, Ltd.
135 S. LaSalle St., Suite 2200
Chicago, Illinois 60603
(312) 726-5015

9