IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CHRISTINE RADOGNO, in her official capacity as Minority Leader of the Illinois Senate, THOMAS CROSS, in his official capacity as Minority Leader of the Illinois House of Representatives, ADAM BROWN, in his official capacity as a state representative from the 101st Representative District and individually as a registered voter, VERONICA VERA, ANGEL GARCIA, EDWIN TOLENTINO, and THE ILLINOIS REPUBLICAN PARTY (Intervening Plaintiff), | ) ) ) ) ) ) ) ) ) ) ) ) | NO.    1:11-cv-04884 |
| Plaintiffs, | ) ) ) | Judges Elaine E. Bucklo Diane S. Sykes and Philip P. Simon |
| vs | ) ) ) | Magistrate Geraldine Soat Brown |
| ILLINOIS STATE BOARD OF ELECTIONS, RUPERT BORGSMILLER, Executive Director of the Illinois State Board of Elections, HAROLD D. BYERS, BRYAN A. SCHNEIDER, BETTY J. COFFRIN, ERNEST C. GOWEN, WILLIAM F. McGUFFAGE, JUDITH C. RICE, CHARLES W. SCHOLZ, and JESSE R. SMART, all named in their official capacities as members of the Illinois State Board of Elections, AFRICAN AMERICANS FOR LEGISLATIVE REDISTRICTING (Intervening Defendant), UNITED NEIGHBOR-HOOD ORGANIZATION (Intervening Defendant), COLOMBIANOS UNIDOS PARA UNA LABOR ACTIVE (Intervening Defendant), HISPANIC AMERICAN CONSTRUCTION INDUSTRY ASSOCIATION (Intervening Defendant), and FEDERACION JALISCIENSE DEL MEDIO OESTE DE LOS ESTADOS UNIDOS (Intervening Defendant), | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) ) | |

**PLAINTIFFS' RESPONSE TO DEFENDANTS' RULE 12(B)(6) MOTION TO DISMISS COUNTS 2, 3, AND 4 OF THE SECOND AMENDED COMPLAINT**

In ruling on a motion to dismiss, the court must accept as true all of the factual allegations contained in the complaint and must draw all possible inferences in plaintiff's favor. *Justice v. Town of Cicero*, 577 F.3d 768, 771 (7th Cir. 2009). Defendants' Motion to Dismiss fails to recognize this fact. Plaintiffs have sufficiently set forth claims for Political Gerrymandering with a manageable standard and have alleged clear violations of the Equal Protection Clause.

## ARGUMENT

### I.      COUNT 2 STATES A MANAGEABLE, OBJECTIVE STANDARD BY WHICH THE COURT CAN ASSESS THE EFFECT OF THE GENERAL ASSEMBLY'S PARTISAN GERRYMANDER

In Count 2 of the Second Amended Complaint, Plaintiffs articulate a manageable standard buttressed by objective data that will allow this Court to measure the effect of the Redistricting Plan's partisan gerrymander on the representational rights of Republicans. As Justice Kennedy stated in his controlling opinion in *Vieth*, judicial relief in partisan gerrymandering cases must rest "on the conclusion that [political] classifications, though generally permissible, were applied in an invidious manner or in a way unrelated to any legitimate legislative objective." *Vieth v. Jubelirer*, 541 U.S. 267, 307 (2004) (Kennedy, J., concurring).[1] Justice Kennedy recognized that technology can assist courts in "making more evident the precise nature of the burdens gerrymanders impose on the representational rights of voters and parties." *Id.* at 313 (Kennedy, J., concurring).

---

[1] The Defendants attempt to characterize the plurality opinion in *Vieth* as the opinion of the Court. They are mistaken. Justice Scalia announced the judgment of the Court in *Vieth*, but the controlling opinion was that of Justice Kennedy. *See Marks v. United States*, 430 U.S. 188 (1977) ("When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds.") (internal quotation omitted).

The allegations in Count 2 precisely quantify the extent to which political classifications were applied in an invidious manner or in a way unrelated to any legitimate legislative objective in the Redistricting Plan. As Plaintiffs have alleged, Democratic incumbents in the Redistricting Plan retain on average 70% of their core constituency. 2d Amend. Compl. ¶ 156. By contrast, Republican incumbents retain on average 13% less of their core constituency than their Democratic incumbent counterparts. *Id.* ¶ 157. The Second Amended Complaint alleges that 23% of the Representative Districts in the Redistricting Plan fail to adhere to the compactness requirement as set forth in the Illinois Constitution and cases interpreting it. *Id.* ¶ 125; IL Const. Art IV, §3(a); *see also Schrage v. State Bd. of Elections*, 88 Ill.2d 87 (1981). The Plaintiffs have alleged that each and every one of the 28 districts that fail to meet this standard have the effect of diminishing the representational rights of Republicans. *Id.* ¶¶ 126, 146-48. As it relates to the preceding Illinois redistricting plan, Plaintiffs allege that the current Redistricting Plan is demonstrably less compact and splits more traditional redistricting boundaries, such as municipalities and townships, than its predecessor. *Id.* ¶¶ 112, 114, 146. The Second Amended Complaint also alleges that the Fair Map, proposed by the Republicans and summarily ignored by the majority party, was more compact and split fewer traditional redistricting boundaries than the Redistricting Plan. *Id.* ¶¶ 105, 113, 115, 164. With regard to incumbent pairings, which Plaintiffs acknowledge cannot be totally avoided in the redistricting process, the Plaintiffs allege that Republican incumbents were saddled with more than double (69.6% versus 30.4%) of the total number of pairings. *Id.* ¶ 158.

While there are undoubtedly cases in which it is difficult to determine whether political classifications were applied in an invidious manner or in a way unrelated to any legitimate legislative objective, this case is not one of them. At a minimum, a redistricting plan must be

deemed to have run afoul of this standard when: (1) the plan is less compact than the one it replaces; (2) the plan splits more traditional political boundaries than the one it replaces; (3) the plan is demonstrably less compact and splits more traditional political boundaries than necessary as shown by the Fair Map plan; (4) 100% of the districts that fail to meet well-established state law standards for compactness effect the representational interests of the Republican party; (5) minority-party incumbents are deprived of a substantially greater proportion of their core constituencies than majority-party incumbents; and (6) more than two-thirds of incumbent pairings pit one minority-party incumbent against another. *Id.* ¶¶ 105, 113, 115, 125-26, 133, 146, 150, 156-58, 164. This is not a nebulous "totality of the circumstances" test of the kind rejected by the plurality in *Vieth*. Each of its components is neutral, grounded in the State Constitution, well-recognized traditional redistricting principles and core concerns of equal protection. All are straightforwardly and objectively quantifiable.

It cannot seriously be denied that requiring minority party incumbents to campaign in districts in which they have no relationship with 44% of the potential constituents will have a negative effect on that party's representational rights throughout the state. Nor can it be questioned that a 13% deficit in maintenance of incumbent-constituency relationships constitutes a substantial partisan discrepancy that should at least place the burden on the line-drawers to justify the discrepancy in terms of traditional districting criteria. Similarly, with regard to compactness and incumbent pairings, allegations of a systematic and pervasive manipulation of nearly a quarter of the Representative Districts in a redistricting plan for partisan gain, and the saddling of the minority party with nearly 70% of the incumbent pairings, at the very least state a claim of denial of equal protection.

To be sure, the standard for an unconstitutional partisan gerrymander can never be stated with absolute, crystalline verbal precision. But this Court need not achieve that elusive goal in order to deny the Defendants' Motion to Dismiss. It is enough to say that, no matter where one locates the exact threshold beyond which political classifications begin to be applied in an invidious manner or in a way unrelated to any legitimate legislative objective, the allegations in the Second Amended Complaint clear that threshold with room to spare. As the Supreme Court has stated in the Due Process Clause context:

> It is true that extreme cases often test the bounds of established legal principles, and sometimes no administrable standard may be available to address the perceived wrong. But it is also true that extreme cases are more likely to cross constitutional limits, requiring this Court's intervention and formulation of objective standards.

*Caperton v. A. T. Massey Coal Co., Inc.*, 129 S.Ct. 2252, 2265 (2009). The extreme facts alleged in the Second Amended Complaint provide ample material from which such objective standards may be derived in the partisan gerrymandering context.[2]

If any doubt remained that the *outcome* of the 2011 redistricting process transgressed constitutional boundaries, that doubt is put to rest by the blatantly unequal and exclusionary *process* described in the Second Amended Complaint. For example, the Second Amended Complaint alleges that the Democratic Caucuses refused to allow the Fair Map proposed by the

---

[2] The viability of the partisan gerrymandering claim in this case is buttressed by another objective fact, of which this Court may take judicial notice: the Democratic Caucuses drew up the 2011 Redistricting Plan in the aftermath of an election that showed, both statewide and nationally, that the Democratic Party was swimming against a strong electoral tide. In the 2010 congressional elections, for instance, Illinois voters elected a Republican Senator in a statewide election and rejected four incumbent Democratic Representatives in favor of Republican challengers. In the 2010 state Representative District elections, the Republicans picked up 6 additional seats. As Justice Kennedy noted in his controlling opinion in the Supreme Court's most recent partisan gerrymandering case, a redistricting that "entrench[es] a party on the verge of minority status" is far more troubling than one that merely "result[s] in the majority Republican Party capturing a larger share of the seats." *LULAC v. Perry*, 548 U.S. 399, 419 (2006) (opinion of Kennedy, J.).

Republican Caucuses to even receive consideration. 2d Amend. Compl. ¶ 164. The Fair Map was more compact and split fewer communities of interest. *Id.* ¶¶ 113, 115. The Plaintiffs also allege that the Democratic Caucuses excluded the members of the general public, including Republican voters, from substantive participation in the redistricting process. *Id.* ¶ 165.

The Plaintiffs have more than sufficiently alleged objective, quantifiable facts and a standard that shows that political classifications were applied in an invidious manner or in a way unrelated to any legitimate legislative objective in the 2011 legislative redistricting process. Accordingly, Defendants' Motion to Dismiss Count 2 of the Second Amended Complaint should be denied.

## II. COUNTS 3 AND 4 STATE VALID CAUSES OF ACTION UNDER THE EQUAL PROTECTION CLAUSE AND MUST NOT BE DISMISSED

Defendants assert that Counts 3 and 4 of Plaintiffs' Second Amended Complaint fail to state a claim for Defendants' violation of the Equal Protection Clause of the Fourteenth Amendment. Notably, Defendants fail to cite any authority for the proposition that Plaintiffs' allegations are lacking. Moreover, to the extent Defendants characterize Counts 3 and 4 as political gerrymandering or First Amendment claims, Defendants are wrong. Counts 3 and 4 are brought pursuant to the Fourteenth Amendment's Equal Protection Clause due to Defendants' intentional discrimination against Republican voters, a protected class. Defendants' effort to turn these claims into political gerrymandering or First Amendment claims fail. Accordingly, Defendants' Motion to Dismiss Counts 3 and 4 must be denied.

For decades, the Supreme Court and this Court have recognized that when the government intentionally violates state law for the purpose of discriminating against a class of individuals, the government violates the Equal Protection Clause of the Fourteenth Amendment.

*Snowden v. Hughes*, 321 U.S. 1, 11, 64 S.Ct. 397, 402 (1944); *Kendrick v. Walder*, 527 F.2d 44, 47 (7th Cir. 1975). As noted by the Court in *Snowden*: "[w]here discrimination is sufficiently shown, the right to relief under the Equal Protection Clause is not diminished by the fact that the discrimination relates to political rights." 321 U.S. at 11, 64 S.Ct. at 402. Further, this Court has specifically stated that "political discrimination based upon political beliefs or party affiliations" will support an equal protection claim. *Briscoe v. Kusper*, 435 F.2d 1046, 1052 (7th Cir. 1970). *See also Abcarian v. McDonald*, 617 F.3d 931, 938 (7th Cir. 2010) (Fourteenth Amendment reaches state action that treats a person poorly because of political affiliation) and *Sangmeister v. Woodard*, 565 F.2d 460, 465 (7th Cir. 1977) (acknowledging that political party affiliation is a protected class under the Equal Protection Clause).

Elections cases are of special importance. "Confidence in the integrity of our electoral processes is essential to the functioning of our participatory democracy." *Hunter v. Hamilton County Bd. of Elections*, 635 F.3d 219, 234 (6th Cir. 2011) (quoting *Purcell Gonzalez,* 549 U.S. 1, 4, 127 S.Ct. 5, 7 (2006). "Having once granted the right to vote on **equal terms**, the State may not, by later arbitrary and disparate treatment, value one person's vote over that of another." *Hunter*, 635 F.3d at 234. (emphasis added) (quoting *Bush v. Gore,* 531 U.S. 94, 104–05, 121 S.Ct. 525, 530 (2000)). As noted by the court in *Hunter,* "[a]t a minimum, ... equal protection requires 'nonarbitrary treatment of voters.' " (quoting *Bush,* 531 U.S. at 105, 121 S.Ct. at 530).

One of the traditional ways in which the State accomplishes the goal of maintaining the equality of every citizen's voting rights is by satisfying State constitutional requirements. Illinois has only three constitutional requirements on maps: equal population, contiguity and *compactness*. IL Const. Art. II, §3(a). This map completely ignores one of those three constitutional requirements – compactness. Illinois citizens have a constitutional right to

7

compact voting districts. *Id.* In the Second Amended Complaint, Plaintiffs allege that Defendants may not violate this Illinois constitutional mandate in order to discriminate against Plaintiffs with respect to their ability to cast meaningful votes because of their status as Republican voters. Yet this is precisely what the Redistricting Plan does by virtue of the enactment and implementation of the proposed Redistricting Plan. Therefore, Defendants' Motion to Dismiss Counts 3 and 4 must be denied.

In Counts 3 and 4, Plaintiffs specifically allege that the Redistricting Plan violates Plaintiffs' rights by drawing 28 districts which are not compact as required by the Illinois Constitution. 2d Amend. Compl., ¶¶ 125-133, 138, 169-188. Moreover, and critically, Plaintiffs allege that the Redistricting Plan's failure in this regard was not the result of ineptness but rather, was specifically due to a discriminatory animus directed at Plaintiffs and Republican voters. *Id.* Further, Plaintiffs allege, *inter alia*, that the Representative Districts were purposefully and intentionally designed to dilute the vote of Republicans. 2d Am. Compl., ¶ 177.

In *Kendrick v. Walder*, 627 F.2d 44, 47 (7th Cir. 1975), this Court specifically noted that government action which violates state law "can result in a denial of equal protection where there is design or intent to discriminate or a suspect classification results." (citing *Snowden v. Hughes*, 321 U.S. 1, 7-8, 64 S.Ct. 397, 401 (1944)). In *Kendrick*, the court held that the plaintiffs' allegations that the use of an at-large system of voting within the City of Cairo diluted the votes of African Americans in violation of the Equal Protection Clause. *Kendrick,* 627 F.2d at 48. In this case, Plaintiffs allege that the Redistricting Map dilutes the votes of Plaintiffs and Republican voters, a protected class under the Equal Protection Clause. Therefore, Plaintiffs have adequately alleged claims under the Equal Protection Clause.

Defendants also argue that Counts 3 and 4 are simply a restatement of Plaintiffs' First Amendment claims which were previously dismissed pursuant to the Court's Order of October 21, 2011 ("Order"). In its Order, the Court relied on the decision in *Kidd v. v. Cox*, 2006 WL 1341302 (May 16, 2006, N.D. GA) when it found that the plaintiffs there failed to state a First Amendment claim. However, *Kidd* is readily distinguishable in the context of Plaintiffs' Equal Protection claims as set forth in Counts 3 and 4 of the Second Amended Complaint.

The *Kidd* decision is inapplicable to Counts 3 and 4 because Plaintiffs make no First Amendment claims in the Second Amended Complaint and, the court in *Kidd* resolved the issues after trial, not at the pleading stage. 2006 WL 1341302 at *3. Repeatedly in their Motion, Defendants improperly ignore Plaintiffs' allegations and seek to have Plaintiffs prove their case at the pleading stage. For example, Defendants imply that the lack of compactness is not enough to prove discrimination. Mot. to Dismiss, p. 6. Defendants' imposition of such a standard in a motion to dismiss is improper as a plaintiff is not required to prove the case at the pleading stage, and Defendants continually fail to accept Plaintiffs' well-pled allegations and reasonable inferences as required. *Rujawitz v. Martin*, 561 F.3d 685, 688 (7th Cir. 2009). In the Second Amended Complaint, Plaintiffs specifically allege that:

176. The Representative Districts were purposefully and intentionally designed to dilute the vote of Republicans in favor of Democrats in violation of Plaintiffs' political beliefs and right to affiliate.

177. No sufficient or neutral justification exists for the bizarre shape of the Representative Districts in Redistricting Plan other than the partisan advantage of Democratic voters to the detriment of Republican voters.

178. The State failed to fulfill its duty as required by the Illinois Constitution as set forth above because the Redistricting Plan passed by the Democratically-controlled House and Senate was designed to and does intentionally and purposefully discriminate against Republican voters in favor of otherwise similarly situated Democratic voters.

179.    Because the Redistricting Plan intentionally and purposefully discriminates against Plaintiffs and Republican voters due to their political beliefs and desire to affiliate, the enforcement of the Redistricting Plan violates the Plaintiffs' rights granted by the Equal Protection Clause of the Fourteenth Amendment to United States Constitution.

In addition, the plaintiffs in *Kidd* abandoned their claim of a state constitutional violation, and there is nothing in the decision to suggest that the plaintiffs in *Kidd* claimed that the defendants intentionally violated a state law with the intent of discriminating due to the plaintiffs' status in a protected class.  *Kidd,* 2006 WL 1341302 at *3.  As held by the Court in *Snowden,* such intentional violations give rise to a cognizable claim under the Equal Protection Clause.  321 U.S. at 7-8, 64 S.Ct. at 401.

In support of their argument that Plaintiffs' claims are really First Amendment claims, Defendants cite *Good News Club v. Milford Central School*, 533 U.S. 98, 121 S.Ct. 2093 (2001) and *Elrod v. Burns,* 427 U.S. 347, 96 S.Ct. 2793 (1976).  However, neither case supports dismissal of Counts 3 and 4.  In *Good News*, the issues had nothing to do with political rights or vote dilution.  Rather, the decision holds simply that a school district may not discriminate against a club based upon its religious viewpoint.  Furthermore, the decision in *Elrod* actually supports Plaintiffs' claim in this case.  In *Elrod,* the Court found that the plaintiffs' complaints regarding retaliation or termination based upon political patronage violated both the First **and the Fourteenth Amendments**. 427 U.S. at 372-73, 396.  Accordingly, the authority cited by Defendants does not support their argument that Plaintiffs' claims must be pigeon-holed as a First Amendment claim.  Therefore, Defendants' Motion to Dismiss on this basis must be rejected.

Defendants also assert that Plaintiffs fail to set forth any analysis to judge their Equal Protection claims.  However, Counts 3 and 4 do not fall within the purview of *Vieth v. Jubelirer*,

54 U.S. 267 (2004) and *League of Latin American Citizen v. Perry*, 548 U.S. 399 (2006) because they are not political gerrymandering claims. Rather, as established *supra*, Counts 3 and 4 set forth cognizable and valid claims under the Equal Protection Clause and are subject to the standards articulated in *Snowden v. Hughes*, 321 U.S. 1, 11, 64 S.Ct. 397, 402 (1944): Did the Defendants violate the Illinois Constitution's requirement of compact districts in order to discriminate against Plaintiffs? If so, Plaintiffs have stated a claim and Defendants are liable.

Assuming *arguendo,* that this Court were to decide that the judicially manageable standards issue raised in *Vieth* and *Lulac* needed to be met, that standard is met by the Plaintiff's allegations. Wherever a map is drawn in violation of state law for a predominantly discriminatory purpose based on party affiliation or political voting patterns, it is a violation of the Equal Protection Clause. Courts have already decided that one can determine the predominant purpose behind map drawing. *Miller v. Johnson,* 515 U.S. 900, 916, 115 S.Ct. 2475, 2488 (1995). Hence, the United States Supreme Court has already decided that this standard is judicially manageable.

Defendants also assert that Plaintiffs fail to identify which districts fail to meet the Illinois Constitution's compactness requirement. Defendants' argument wholly fails to acknowledge paragraph 125 of the Second Amended Complaint wherein Plaintiffs specifically identify 28 separate districts which are not compact. Defendants engage in litany of rhetorical questions regarding what makes a district compact. Mot. to Dismiss, p. 6. Again, Defendants improperly seek to have this Court resolve proof issues at the pleading stage, and such efforts should not be entertained as these are factual determinations which must be resolved in Plaintiffs' favor as they allege the districts are not compact. Moreover, Plaintiffs have tendered their expert reports regarding the lack of compactness in the districts, and said opinions are based

11

upon mathematical certainty based upon tests previously accepted by the Seventh Circuit. Accordingly, Defendants claim that Plaintiffs have failed to set forth a standard by which to judge Defendants' conduct must be rejected.

Defendants seek to dismiss Count 4 on the basis that it is duplicative of Count 3 and omits various allegations regarding the bizarre shape of the districts drawn by Defendants. Count 4 is not duplicative as it sets forth a different standard of intent than that alleged in Count 3. Count 3 alleges Defendants' conduct was "intentional" and "purposeful." Count 4 alleges Defendants' conduct was "invidious" and "arbitrary." As noted by the court in *Hunter, supra*, these standards are not the same but both will suffice to support a claim for a violation of the Equal Protection Clause in the context of political rights. 635 F.3d at 234. Further, to the extent Defendants claim allegations were omitted from Court 4, Defendants fail to recognize that all preceding allegations were adopted and incorporated into Count 4. Accordingly, Defendants' arguments must be rejected, and the Motion to Dismiss Counts 3 and 4 denied.

## CONCLUSION

Against that backdrop, Plaintiffs have sufficiently stated claims in Counts 2, 3 and 4 of their Second Amended Complaint. Accordingly, Defendants' Motion to Dismiss must be denied.

Respectfully submitted,

/s/--------Phillip A. Luetkehans----------------------
One of the Attorneys for Plaintiffs Christine
Radogno, Veronica Vera and Edwin
Tolentino

/s/ --------Andrew Sperry-----------------------------
One of the Attorneys for Plaintiffs Thomas Cross,
Adam Brown and Angel Garcia

/s/--------Thomas M. Leinenweber------------------
One of the Attorneys for Plaintiffs Thomas Cross,
Adam Brown and Angel Garcia

E-filed: November 11, 2011

Phillip A. Luetkehans, 06198315
pluetkehans@slg-atty.com
Brian J. Armstrong, 06236639
barmstrong@slg-atty.com
Stephanie J. Luetkehans, 06297066
sluetkehans@slg-atty.com
SCHIROTT, LUETKEHANS & GARNER, P.C.
105 East Irving Park Road
Itasca, IL 60143
630-773-8500

Thomas M. Leinenweber, 6208096
thomas@landb.us
Peter Baroni, 6236668
peter@ilesq.com
Leinenweber Baroni & Daffada LLC
203 N. LaSalle St., Suite 1620
Chicago, IL 60601
(866) 786-3705

Andrew Sperry, 6288613
asperry@laroseboscolaw.com
LaRose & Bosco, Ltd.
200 N. LaSalle St., Suite 2810
Chicago, IL 60601
(312) 642-4414

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 11th day of November, 2011, I electronically filed Plaintiffs' Response to Defendants' Rule 12(B)(6) Motion to Dismiss Counts 2, 3 and 4 of the Second Amended Complaint with the Clerk of the U.S. District Court, Northern District of Illinois, Eastern Division using the CM/ECF system which will send notification of such filing to the following:

asperry@laroseboscolaw.com

thomas@landb.us

bstratton@atg.state.il.us

dellis@hds.ilga.gov

mlayden@rjpltd.com

rprendergast@rjpltd.com

mjkasper60@mac.com

peter@ilesq.com

emadiar@senatedem.ilga.gov

fogartyjr@gmail.com

mike.persoon@gmail.com

kennethjohnsonlaw@earthlink.net

courtneynottage@aol.com

htristan@tristancervantes.com

pcervantes@tristancervantes.com

kreidy@trisancervantes.com

lmishkin@sandmlegal.com

wharte@williamharteltd.com

jmannix@williamharteltd.com

and I hereby certify that I mailed by U.S. Postal Service the document(s) to the following non-registered attorneys and interested parties:  NONE.

/s/_____ Phillip A. Luetkehans
One of the Attorneys for Plaintiffs
Christine Radogno, Veronica Vera
and Edwin Tolentino

Phillip A. Luetkehans, 06198315
pluetkehans@slg-atty.com
Brian J. Armstrong, 06236639
barmstrong@slg-atty.com
Stephanie J. Luetkehans, 06297066
sluetkehans@slg-atty.com
Schirott, Luetkehans & Garner, P.C.
105 East Irving Park Road
Itasca, IL 60143
630-773-8500

Thomas M. Leinenweber
thomas@landb.us
Peter G. Baroni
peter@ilesq.com
Leinenweber Baroni & Daffada LLC
203 N. LaSalle St., Suite 1620
Chicago, IL 60601
(866) 786-3705

Andrew Sperry, 6288613
LaRose & Bosco, Ltd.
200 N. LaSalle St., Suite 2810
Chicago, IL 60601
(312) 642-4414
asperry@laroseboscolaw.com